UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| LARRY D. ANDERSON,<br><br>　　Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　Respondent. | Case No.: 1:16-cv-00499-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Larry D. Anderson's Petition for Review (Dkt. 1), appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits.[1] *See generally* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. §§ 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On February 22, 2013, Larry D. Anderson ("Petitioner") protectively applied for Title II disability and disability insurance benefits. (AR 17.) Petitioner alleged disability beginning January 15, 2012. (*Id.*) His claim was denied initially on May 30, 2013 and then again on reconsideration on December 24, 2013. (*Id.*) On January 2, 2014, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On April 30, 2015, ALJ Lloyd E. Hartford held a video hearing from Billings, Montana during which Petitioner,

---

[1] Nancy A. Berryhill became the acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER – 1**

represented by counsel, appeared and testified by video from Idaho Falls, Idaho. (*Id.*) Impartial vocational expert Kent Granat also appeared and testified. (*Id.*)

On May 29, 2015, the ALJ issued a Decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the relevant period. (AR 26.) Petitioner requested review from the Appeals Council on June 29, 2015. (AR 12.) On September 14, 2016, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted his administrative remedies, Petitioner timely filed the instant action. He contends that "the denial of his disability claim is not supported by substantial evidence under the standards set forth by 42 U.S.C. § 405(g) and all other applicable laws and regulations, including the weight of the evidence, his credibility, the medical opinions of his doctors, and any and all other applicable evidentiary issues, both in law and in fact." Pet. for Review 2 (Dkt. 1). Petitioner challenges the sufficiency of the evidence on which the ALJ relied and the legal correctness of the ALJ's treatment of Petitioner's medical source statements and Petitioner's credibility. *See generally* Pet'r's Br. (Dkt. 17). Petitioner asks the Court to reverse the ALJ's decision and remand for the SSA to hold a supplemental hearing. *Id.*

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

**MEMORANDUM DECISION AND ORDER – 2**

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity from his alleged onset date of January 15, 2012 through his date last insured of December 31, 2014. (AR 19.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when

medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "lumbar spondylosis, bilateral rotator cuff syndrome, diabetes mellitus, and obesity." (AR 19.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, his claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 20–21.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the

**MEMORANDUM DECISION AND ORDER – 5**

claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner had the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) except as follows: The claimant had the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk with normal breaks for 6 hours in an 8-hour workday, sit with normal breaks for 6 hours in an 8-hour workday; climb, stoop and crouch only occasionally; and should avoid concentrated exposure to unprotected heights.

(AR 21–25.) The ALJ further found that Petitioner is able to perform his past relevant work as an HVAC technician. (AR 25.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do such other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, because the ALJ found that Petitioner is able to perform his past relevant work as an HVAC technician, the ALJ did not consider whether there are other jobs that exist in significant numbers in the national economy that Petitioner could perform.

Based on the finding that Petitioner could engage in past relevant work, the ALJ ultimately concluded that Petitioner "was not under a disability, as defined in the Social Security Act, at any time from January 15, 2012, the alleged onset date, through December 31, 2014, the date last insured." (AR 26.)

B.  Analysis

Petitioner argues the ALJ's decision denying benefits is not supported by substantial evidence and is contrary to law and regulation. Pet. for Review 2 (Dkt. 1). First, he argues the ALJ's finding he could return to past relevant work as an HVAC technician is not supported by substantial evidence. Pet'r's Br. 4–5 (Dkt. 15). Second, he argues the ALJ erred in his treatment of the opinions of several medical sources. *Id.* at 5–14. Third, he argues the ALJ erred by failing to consider Petitioner's work history when assessing Petitioner's credibility. *Id.* at 14–17. The Court will address each assignment of error in turn.

1. **Petitioner Has Not Shown Error in the ALJ's Finding He Could Return to Past Relevant Work.**

The ALJ found that Petitioner had the RFC to perform medium work, subject to limitations of lifting or carrying 50 pounds occasionally and 25 pounds frequently; climbing, stooping, and crouching only occasionally; and avoiding concentrated exposure to unprotected heights. (AR 21.) Applying this RFC, the ALJ further found that Petitioner could return to his past relevant work as an HVAC technician, classified in the Dictionary of Occupational Titles ("DOT") at code 637.261-014. (AR 25; *see also* DICOT 637.261-014, 1991 WL 685487.) The ALJ acknowledged that a vocational expert at the hearing testified this is a medium duty occupation that required very heavy exertion as performed by Petitioner. (AR 25.) However, the ALJ found that Petitioner was able to perform it "as generally performed" because it is "medium level work" in that circumstance. (AR 25–26; *see also* AR 71.) At the hearing, the ALJ asked the vocational expert if a hypothetical person of Petitioner's stated age, education and work experience, who had testified credibly as Petitioner testified, would be able to perform Petitioner's past work as an HVAC technician. (AR 74–75.) The vocational expert answered, "No." (AR 75.) The ALJ did not ask the vocational expert whether such a person could perform

**MEMORANDUM DECISION AND ORDER – 7**

the work as generally performed in the national economy rather than as Petitioner himself had performed it.

Petitioner initially argues that the ALJ's failure to ask the vocational expert to consider the RFC the ALJ ultimately found means that there was nothing for the ALJ to rely upon in finding Petitioner could work as an HVAC technician. Pet'r's Br. 4–5 (Dkt. 15.) After all, Petitioner points out, "[t]he vocational expert never stated a person limited as the ALJ described could perform [Petitioner's] past job as a HVAC technician." *Id.* at 4.

On its face, this argument holds no water. In assessing whether Petitioner could return to past relevant work, the ALJ was not obligated to ask a vocational expert any particular questions – or any questions at all. At this step of the sequential process, it was Petitioner's burden to show that he could not return to past relevant work rather than the Commissioner's burden to show that he could. In the context of determining whether a claimant can perform past relevant work, the regulation describing when a claimant's vocational background will be considered states that

> We *may* use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist *may* offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence *may* be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist *may* offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b) (emphases added). The repeated use of the permissive word "may" – rather than the use of a mandatory word such as "must" or "shall" – indicates the ALJ is not

**MEMORANDUM DECISION AND ORDER – 8**

obligated to seek or rely upon such testimony, at least when deciding whether a claimant can perform past relevant work.

However, Petitioner clarifies this argument in his reply brief. Therein, he focuses on the vocational impact of nonexertional limitations in the ALJ's RFC finding. Pet'r's Reply Br. 2–3 (Dkt. 18). That is, Petitioner repeats the ALJ's RFC finding that Petitioner can climb, stoop, and crouch only occasionally and that he should avoid concentrated exposure to unprotected heights, and then he argues that the ALJ cited no evidence that such limitations are compatible with the work of an HVAC technician as generally performed. *Id.* Petitioner does not argue the ALJ failed to ask the proper questions of the vocational expert. Rather, Petitioner argues there is simply no evidence supporting the ALJ's express finding that "[a]s generally performed (DOT Code 637.261-014), HVAC technician work is medium level work, climbing, stooping, kneeling, crouching are present occasionally, and exposure to high exposed places is not present." (AR 25–26.) To the contrary, Petitioner cites his own "Work History Report" in which he indicates that, as he performed the work, he would climb, stoop, kneel, crouch, and crawl virtually all day. Pet'r's Reply Br. 2–3 (Dkt. 18); AR 209–211. Petitioner's self-reported work history is neither objective nor indicative of how the work is generally performed in the national economy. Nonetheless, Petitioner contends it is the only evidence in the record on the topic of how frequently an HVAC technician climbs, stoops, kneels, or crouches.

The Court is not persuaded by Petitioner's argument. The official DOT listing for HVAC technician does, in fact, indicate that such work, as generally performed in the national economy, involves only occasional climbing, stooping, kneeling, or crouching and that exposure to high exposed places is not present. DOT 637.261-014, 1991 WL 685487. The ALJ's finding is

consistent with this listing. Therefore, his decision is supported by substantial evidence on this issue and Petitioner has not shown error. The Court will deny Petitioner's petition on this issue.

2. **The ALJ Did Not State a Sufficient Basis for Rejecting Medical Opinions of Record.**

Petitioner challenges the ALJ's treatment of four medical opinions of record. Pet'r's Br. 5–14 (Dkt. 15). Petitioner testified at the hearing that his primary care physician, Dr. Kay Christensen, M.D., has been treating him for approximately 30 years. (AR 48.) Medical records generated by Dr. Christensen during annual physical examinations show that Petitioner's medical history includes "BACK PAIN --Chronic, Shoulder pain –Chronic, Rotator cuff –Bilateral." (AR 255.) Dr. Christensen also prepared a "Medical Opinion Re: Ability to Do Physical Activities," in which he opined that Petitioner can never safely lift and carry 50 pounds, but can frequently lift and carry up to 20 pounds. (AR 415.) He also opined that Petitioner can occasionally climb stairs but never twist, stoop, bend, crouch, or climb ladders. (AR 416.)

The record also includes opinions from two State agency consultative physicians. At the initial determination level, Dr. Ward E. Dickey, M.D., assessed a light RFC, found that Petitioner was precluded from past relevant work, and opined that he could only occasionally lift and carry 20 pounds, but could frequently lift and carry up to 10 pounds. (AR 85, 86, 89.) At the reconsideration level, Dr. Leslie E. Arnold, M.D., similarly found that Petitioner was limited to light work, could not perform past relevant work, and could only occasionally lift and carry 20 pounds, but could frequently lift and carry up to 10 pounds. (AR 95, 98, 100.)

Finally, the record discloses an opinion from consultative examiner Dr. Ralph D. Heckard, M.D. (AR 316–319.) Dr. Heckard's report reflects Petitioner's claim that he is functionally limited to lifting 30 pounds. (AR 316.) His report also includes these relevant findings:

> On clinical examination today he has findings of bilateral rotator cuff syndrome with palpation tenderness. He has intact ranges of motion at the shoulders. There are no deficits of motor, sensory or reflex functions of the upper extremities. He has palpation tenderness of the low lumbar region with no palpable spasms and intact lumbar ranges of motion. He has negative bilateral straight leg raising tests and there are no deficits of motor, sensory or reflex functions of the lower extremities. The remainder of the musculoskeletal examination reveals intact ranges of motion and strengths. There is no measured muscular asymmetry or atrophy. Gait and station are intact. He uses no assistive devices. He is able to sit, stand and walk unassisted and he can lift, carry and handle objects with both gross and fine manual motor dexterity. His speech and hearing are intact and he/she can travel. There are no presenting mental status features which would significantly impair or preclude his/her ability to make reasonable workplace decisions and occupational adjustments.

(AR 319.) Dr. Heckard did not opine on Petitioner's RFC or exertional limitations but did report normal range of motion and muscle strength throughout his back, shoulders, and arms. (AR 317–318.)

The ALJ placed little weight on Dr. Christensen's opinion. To explain this assessment, the ALJ stated that Dr. Christensen's opinion

> was not supported by explanation and the reported limitations were quite overrated in view of medical findings in his own treatment records … and were inconsistent with other substantial evidence of record from Dr. Heckard whose opinion was better supported by explanation and objective medical findings. As an example, Dr. Christensen opined the claimant cannot lift over 20 pounds and can never stoop, yet the claimant objectively had no motor, sensory or reflex deficits of the upper and lower extremities and had intact ranges of motion including intact lumbar and bilateral shoulder ranges of motion.

(AR 24–25.)

The ALJ gave partial weight to the opinions of the State agency consultative physicians. (AR 25.) He found the opinions "were supported by explanation and available evidence." (*Id.*) But he nonetheless found "the claimant had the ability to lift/carry 50 pounds occasionally and 25 pounds on a frequent basis which was supported by his entirely normal motor strength of his upper extremities and intact lumbar and bilateral shoulder range of motion and essentially

**MEMORANDUM DECISION AND ORDER – 11**

unremarkable musculoskeletal exam findings." (*Id.*) He also noted there was no mention of significant ongoing back or shoulder pain complaints in the record and that Petitioner testified he took no pain medication. (*Id.*)

The ALJ gave significant weight to the opinion of the consultative examiner Dr. Heckard, because it was "supported by objective medical findings on thorough examination and it was consistent with the totality of the evidence."

Petitioner contends the ALJ erred by not weighing the medical opinions of record under the framework required by 20 C.F.R. § 404.1527(c). Pet'r's Br. 5–6 (Dkt. 15.) Under that framework, opinions from treating providers are generally given more weight than other opinions. As such, an ALJ must state "clear and convincing reasons that are supported by substantial evidence" to reject the uncontradicted opinion of a treating physician.[2] *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). To reject a contradicted opinion of a treating physician, an ALJ must provide specific and legitimate reasons that are supported by substantial evidence. *Id.*

With respect to Petitioner's exertional limitations, the opinions of treating physician Dr. Christensen and consultative physicians Drs. Dickey and Arnold were consistent in that each opined Petitioner could not lift or carry more than 20 pounds.[3] Moreover, none of these opinions was inconsistent with Dr. Heckard's opinion, which the ALJ gave significant weight. Dr.

---

[2] Respondent reiterates its often-stated position that the "clear and convincing" standard is inconsistent with 42 U.S.C. § 405(g), but acknowledges that it is the law of the Ninth Circuit and therefore is applicable here. The Court will not address this argument.

[3] There was a slight inconsistency in that Dr. Christensen opined Petitioner could "frequently" lift and carry up to 20 pounds while the consultative physicians both opined that he could only "occasionally" lift and carry up to 20 pounds, but the Court does not find this discrepancy significant to this decision.

**MEMORANDUM DECISION AND ORDER – 12**

Heckard did not quantify any exertional limitations, but he also did not go so far as to opine that Petitioner *has* no such limitations. At bottom, Dr. Heckard's report includes Petitioner's subjective assessment of his own limitations[4] as well as Dr. Heckard's own clinical findings, but it does not express any opinion or recommendation about the limits of Petitioner's capacity. Thus, his report does not contradict Dr. Christensen's report.

Because Dr. Christensen's report is uncontradicted in the record, the ALJ could only reject it by stating clear and convincing reasons that are supported by substantial evidence. In this case, the ALJ did not do so. The ALJ rejected Dr. Christensen's report because it was not supported by explanation, because the reported limitations were overrated when compared to Petitioner's treatment records, and because it was inconsistent with Dr. Heckard's opinion. (AR 24–25.) When scrutinized, these do not constitute clear and convincing reasons to reject Dr. Christensen's report.

As discussed *supra*, Dr. Christensen's report was not inconsistent with Dr. Heckard's report. Although Dr. Heckard found normal range of motion and muscle strength, he did not opine on the maximum weight Petitioner could lift or carry. Absent medical evidence or opinion in the record showing these two reports to be inconsistent, the Court will not presume – as the ALJ did – that there is any inconsistency between them. Moreover, because Dr. Christensen's report is uncontradicted in the record, the fact that it is not better supported by explanation falls short of establishing a clear and convincing reason for rejecting it. Although it is true that Dr. Christensen's medical opinion regarding Petitioner's exertional limitations is not detailed, the

---

[4] Petitioner states that Dr. Heckard "opined … that Plaintiff was limited to sitting 60 minutes, standing 3 hours, walking 'not very far,' and lifting up to 30 pounds." Pet'r's Br. 7 (Dkt. 15). This is incorrect. Dr. Heckard's report indicates that Petitioner himself represented to Dr. Heckard that he possessed such limitations; the report documents Petitioner's claims but does not adopt them. (AR 316.)

**MEMORANDUM DECISION AND ORDER – 13**

form on which that opinion is expressed offers little room for explanation. Nor does the opinion need further explanation for credibility. Turning to other record evidence, Dr. Christensen's other records indicate – repeatedly – that Petitioner has a history of chronic back and shoulder pain as well as bilateral rotator cuff problems. It is perhaps significant that the record does not disclose evidence that Petitioner sought treatment during the relevant period for severe back or shoulder pain. But the Court will not read into the record a possible anomaly, if indeed there is one, in light of Dr. Christensen's uncontradicted report.

Nor does the Court credit the ALJ's assessment that Dr. Christensen's reports of Petitioner's limitations were "overrated" in light of his other treatment records. No medical source expressed that notion, and the ALJ, as a lay person, is not qualified to make such an assessment without the benefit of an opinion by an appropriate medical source. The Court also notes that the ALJ found, earlier in his decision, that Petitioner was severely impaired by lumbar spondylosis and bilateral rotator cuff syndrome. (AR 19.) By regulation, an impairment or combination of impairments is only severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ALJ did not attempt to reconcile his finding of severe impairments in Petitioner's back and shoulders with his adoption of Dr. Heckard's opinion expressing normal muscle strength and range of motion in those areas. Nor did he explain how rejecting Dr. Christensen's opinion was consistent with his finding of severe impairments in Petitioner's back and shoulders.

For the foregoing reasons, the ALJ erred in rejecting the opinion of Dr. Christensen. Petitioner's petition will be granted as to this issue. Accordingly, the Court need not and does not opine on whether the ALJ also erred in assigning partial weight to the opinions of the

consultative physicians. Reevaluating Dr. Christensen's opinion will necessarily require reconsidering those opinions as well.[5]

3. **Petitioner Has Not Shown the ALJ Erred by Failing to Consider His Work History When Assessing His Credibility.**

Petitioner contends the ALJ erred in finding Petitioner "partially credible." (AR 22.) He asserts that he has "exemplary work history" and that the ALJ should have considered such work history when evaluating his credibility, as "it is unlikely someone would trade in their productive, and lucrative, work career for the far less lucrative 'career' of receiving disability benefits." Pet'r's Br. 14–15 (Dkt. 15). Petitioner cites 20 C.F.R. § 404.1529(c)(3), which provides in part that the SSA "will consider … information about your prior work record" when evaluating the intensity and persistence of a claimant's symptoms. *Id.* at 15. He also cites some 30 cases, mostly from district courts and none binding on this Court, for the proposition that it is error for an ALJ to omit discussion of a claimant's work history. *Id.* at 15–17 (including n.1). In one case Petitioner cited, the district court "agreed that the solid 30-year work history described in plaintiff's brief should have been a consideration in assessing credibility." *Roberson v. Colvin*, 2015 WL 1408925 at *7 (N.D. Tex. Mar. 27, 2015). However, the court then held as follows:

> Credibility determinations are reserved to the Commission and this Court may not reconsider those determinations *de novo* or substitute its judgment for the ALJ's. The fact that this Court may have come to a different conclusion than the ALJ does not invalidate the ALJ's determination that plaintiff's subjective complaints were less than credible due to the lack of objective medical evidence. Further, while it would have been better for the ALJ to acknowledge plaintiff's 30–year consistent work history, the failure to reference such in his findings does not mean he was not aware of the history. No reversible error has been shown.

---

[5] Additionally, implicit in both of the first two issues Petitioner raises is a suggestion that the ALJ's RFC finding that Petitioner was capable of "medium work" was improper. Because the issue was not squarely raised and because it is moot in light of the ALJ's error in rejecting Dr. Christensen's opinion, the Court does not opine on whether such a finding was supported by substantial evidence.

**MEMORANDUM DECISION AND ORDER – 15**

*Id.* at *8.

The Court quotes *Roberson* for two reasons. First, the decision in that case referenced "the solid 30-year work history described in plaintiff's brief." *Id.* at *7. Here, Petitioner asserts that he has "exemplary work history." Pet'r's Br. 14 (Dkt. 15.) But Petitioner cites no evidence in support of this assertion. The record shows Petitioner was born in 1955 and has reported earnings from 1973 through 2009. (AR 36, 176–177.) A work history report Petitioner completed indicates he worked in the HVAC industry from at least 1983 through 2009 and that he was apparently self-employed from 2001 forward (AR 207–211.) Thus, there is evidence in the record as to the duration of Petitioner's work history, along with some evidence that he ran his own business. But neither the ALJ's decision nor Petitioner's briefing here contextualizes that work history sufficiently to show that it was "exemplary," as Petitioner asserts, or that it was analogous to the "solid," "30-year consistent work history" in *Roberson*. The Court will not independently make any such finding.

The second reason the Court quotes *Roberson* is that it rejects rather than supports the very argument Petitioner makes in citing it. Petitioner quoted dicta from *Roberson* to suggest the ALJ should have considered the claimant's work history. Pet'r's Br. 15 n.1 (Dkt. 15). But Petitioner omitted the holding from *Roberson* that the ALJ's failure to *reference* Roberson's work history did not mean that he failed to *consider* it. *Roberson*, 2015 WL 1408925 at *8.

The same circumstance obtains here. The ALJ cited and expressly referred to Petitioner's earnings record, which evidences that he had reviewed Petitioner's work history. (AR 19.) The ALJ's obligation is to consider – not to discuss – a claimant's prior work record. 20 C.F.R. § 404.1529(c)(3). Petitioner offers no evidence showing the ALJ failed to consider his work history. Accordingly, this argument offers no basis for remand.

**MEMORANDUM DECISION AND ORDER – 16**

## IV. CONCLUSION

Petitioner has not shown that the ALJ erred by finding that he can return to past relevant work as an HVAC technician or by failing to consider his work history when assessing his credibility. However, Petitioner has shown that the ALJ improperly rejected medical opinions of record. Because Petitioner has shown that the ALJ's decision includes legal error and is not based on substantial evidence, Petitioner's petition is granted, the ALJ's decision is reversed, and this matter is remanded.

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED,** and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: March 30, 2018

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge